UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:26-MJ-3145-NCC |
| | ) | |
| JOHN DAVIS, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES OF AMERICA'S**
**MOTION FOR PRETRIAL DETENTION AND HEARING**

COMES NOW the United States of America and moves the magistrate judge to order defendant detained pending trial. The United States of America states as follows in support of its motion:

1. Under the Bail Reform Act of 1984, 18 U.S.C. § 3142(e), a defendant may be detained without bail prior to trial where, after a hearing, a judicial officer finds that the United States has shown by clear and convincing evidence that no release condition or set of conditions will reasonably assure the safety of the community. In the alternative, the United States may show by a preponderance of the evidence that defendant is a risk of flight. Stated another way, no condition or set of conditions will reasonably assure the defendant's appearance. *See* 18 U.S.C. § 3142(c), (e)-(f); *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003) (*citing United States v. Kisling*, 334 F.3d 734, 735 (8th Cir. 2003) (*quoting United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985) (en banc))); *United States v. Dorsey*, 852 F.2d 1068, (8th Cir. 1988); *United States v. Lewis*, 676 F. Supp. 1008, 1018 (E.D. Mo. 1991); *United States v. Payne*, 660 F. Supp. 288, 291 (E.D. Mo. 1987).

2. Furthermore, the Bail Reform Act describes the factors to be considered in determining whether the required conditions of release exist. 18 U.S.C. § 3142(g). The court is directed to take into consideration the available information concerning:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence…or involves a…firearm, explosive, or destructive devise;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including -- (A) his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings…;
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release…*Id.*

In doing so, it is appropriate for this court to consider challenged evidence in ruling on a motion for pretrial detention. *United States v. Apker*, 964 F.2d 742, (8th Cir. 1992) (citing 18 U.S.C. § 3142(f) (rules concerning admissibility of evidence in criminal trials do not apply in detention hearings); *United States v. Angiulo*, 755 F.2d 969, 974 (1st Cir. 1985) (challenged information via electronic surveillance may be considered regarding detention ruling at least until court determines information was illegally obtained)).

3. Detention is appropriate here pursuant to Title 18, United States Code, Sections 3142(g)(1), 3142(g)(2), 3142(g)(3) and Section 3142(g)(4). The nature and circumstances of the offense merit detention. A federal grand jury in the District of Connecticut has charged the defendant and others with a Hobbs Act conspiracy and attempt, in violation of Title 18, United States Code, Sections 1951 and 2. If convicted on that count, the defendant faces a 20-year maximum prison term. The charge against the defendant is exceedingly serious. In late August 2024, the defendant and three others flew from St. Louis, Missouri to Westchester County, New

York and from there traveled into Connecticut. The sole reason for their trip was the planned home invasion and robbery/extortion of a young man in Danbury, Connecticut who was known to have tens of millions of dollars in Bitcoin in his possession. The intended victim was vulnerable as the Bitcoin was the proceeds of criminal activity, and he would be unable to call law enforcement about any robbery. The defendant was recruited by his associates in St. Louis and promised a hefty payment to participate in the hands-on aspects of the robbery/extortion. The defendant and his co-conspirators obtained rental vehicles, including a cargo van, as well as other supplies, including air rifles and walkie talkies. They stalked the intended target and his parents over the course of two days, waiting for the opportunity to force their way into the target's home and coerce him through violence and threats to transfer the millions in cryptocurrency to accounts controlled by those who were funding and coordinating the conspiracy. The defendant and his associates knocked on the door of the residence they believed to be the victim's with the intention of forcing their way inside when the door opened, but no one answered. They waited for the victim's parents to return home, intending to force their way inside when the parents started to enter their home. Dissension arose among the conspirators before that happened, however, with the defendant and his St. Louis associates believing that they were taking all the risks and sensing that their compatriots were not pulling equal weight. Ultimately, concerned that they had been captured on Ring video and frustrated with the lack of communication with other co-conspirators, the defendant and his St. Louis associates elected to leave. After they departed, another crew arrived from Miami and forcibly abducted the target's parents – dragging them from their vehicle on a public street, beating them with bats and fists, throwing them into the back of a van, binding them with duct tape, threatening to kill them, and driving them in the direction of a rented house in a different town where they planned to hold them hostage. The victims were saved by the quick action of Danbury Police who had been alerted promptly by several eyewitnesses to the crime. But the victims were

seriously injured and severely traumatized. Thus, the nature and the circumstances of the offense charged, involving interstate travel, and the intent and willingness to use substantial violence -- weigh heavily in favor of detention.

4. The weight of the evidence against the defendant is strong and supports detention as well. Substantial evidence, including phone data, video evidence, and other information obtained by the agents, shows the defendant's recruitment, his interstate travel, his involvement in renting a vehicle to use in the crime, as well as his presence in Connecticut during the conspiracy and his participation in surveillance. Additionally, data extracted from the defendant's phone includes a lengthy chat over Telegram that explicitly discusses the details of the crime with other conspirators, including the plan to force their way inside the victims' home, the forceful taking of the cryptocurrency, the stalking of the parents, and their planned abduction. Further, Cash App records indicate that the defendant received payment from one of the organizers of the scheme while in Connecticut. A search of the Airbnb that had been rented for the use of the defendant and his compatriots led to seizure of evidence directly linking the defendant to the rental residence.

5. Defendant's personal characteristics weigh in favor of detention too. First, the fact that the defendant chose to fly interstate for the purpose of committing a violent crime and remained in Connecticut for days in furtherance of that crime is indicative of his mindset and the risk he poses to others. Starting in 2014, the defendant has a steady stream of charges brought against him, typically involving his repeatedly driving without a valid license. In 2018, he was charged with domestic assault, and in 2024 he was charged with violating Valentine's Law, specifically, aggravated flight from police during a stop. The crime for which he has been indicted occurred in August 2024, and in 2025, he was arrested for unlawful use of weapons, for possession of controlled substances, and for aggravated flight from police, among other charges. What raises

particular concern is the fact that the seriousness of the defendant's conduct appears to be escalating rather than the reverse. Further, the defendant has no legitimate employment history.

6. Danger to the community may be established by presenting "significant evidence linking [the defendant] to the violent crime for which he was indicted." *Abad*, 350 F.3d at 797 (*citing Mercedes*, 254 F.3d at 435, 438). As noted above, strong evidence links the defendant to the charged conspiracy that involved intended force, threats of violence, and violence. The United States has established the requisite link.

Furthermore, the substantial punishment the defendant is facing at the federal level where parole has been abolished provides an overwhelming incentive to flee to avoid prosecution. *See United States v. Kaplan*, Case No. 4:06CR337 CEJ (E.D. Mo. June 13, 2007) (Medler, J.) (defendant detained where, among other things, maximum amount of over 70 years of imprisonment provided incentive to flee) (*citing United States v. Martir*, 782 F.2d 1141, 1147 (2nd Cir. 1986) (maximum combined terms of imprisonment of a 105 years creates potent incentives to flee); *United States v. Arndt*, 329 F. Supp. 2d 182, 199 (D. Mass. 2004) (facing lengthy term of imprisonment is in itself an incentive to flee); *United States v. Lewis*, 767 F. Supp. 1008, 1010 (E.D. Mo. 1991) (facing severe sentence if convicted provides incentive to flee)). This case is a serious one with substantial penalties, penalties that exceed what he has faced in his past in state court. His interstate travel to engage in a high-profile crime has placed him in a different situation, one that he may well try to avoid.

WHEREFORE, the United States respectfully requests this magistrate judge to order defendant detained prior to trial.

Respectfully submitted,

THOMAS C. ALBUS
United States Attorney

/s/ *Christine H. Krug*
CHRISTINE H. KRUG #42586MO
KAREN L. PECK #14959CT
Assistant United States Attorneys